Curia, per
Evans, J.
On the first ground, I agree with the presiding Judge, that the age of the negro, as set forth in the bill of sale, is mere description. It is not unsoundness; and the warranty that the negro was sound in body and mind, precluded the implication that any thing else was intended to be warranted. (Chitty on Con. 359 ; 1 Bing. 324.) The rule in relation to implied warranties is, that they do not extend to defects known to the buyer, and that no implication of warranty can arise where the defect was obvious to the senses; because such defects were, or should have been, known to him. A different rule, however, must govern in relation to express warranties, and especially those that are written; because the contract is to be construed most strongly against the warrantor, and because, for any thing we can know, the warranty was given expressly to cover the exist *188 ing, known unsoundness. Besides, a written contract can neither be enlarged, nor limited by parol; and to admit evidence that the disease was obvious to the senses, and from hence to infer that the buyer knew of its existence, and consequently, that it is not included in the warranty as understood by the parties at the time, is in no respect different from the admission of parol evidence of an agreement between the parties, that the seller was not to warrant against the defect complained of. In the one case, the general words of the warranty are limited by an inference from the facts ; in the other, they are controuled by the parol agreement of the parties; and in both cases, the contract is altered, and effect given to it different from its obvious meaning on its face. There are cases in which the facts and circumstances connected with the contract at its creation may be resorted to as a means of interpretation. But, they are those, where, without, it, the contract would be wholly inoperative, because it was unintelligible. Of this description is the case of Collins vs. Lemasters & Lee, (2 Bailey R. 141.) The general rule is, that a contract in writing is to be interpreted by itself and especially if it has, on the face of it, a plain and intelligible meaning.
I have thought it necessary to say this much on the subject of express written warranty, because, it seems from the report, the presiding Judge charged the jury that, if the rupture was so apparent that it must have been seen and known by the plaintiff then the warranty did not cover it. It seems to have been supposed that this case came within the reasons of the principles stated in Wallace vs. Frazier, (2 N. & M’C. R. 517.) The rule, as stated in that case, (and the same is to be found in Chitty on Contracts,) is, that a general warranty “ will not extend to guard against defects that are plain and obvious to the senses of the purchaser, and require no skill to detect themand the cases stated are the loss of an arm, a leg, or an eye. It does not seem to me that *189 the fact of the buyer’s knowledge does, per se, exclude the case from the warranty ; for in the case of Wallace vs. Frazier, it was clear, the disease was known to the purchaser when he bought, and yet the court held the vendor bound by the warranty. I should rather conclude that the defects mentioned are exempted from the warranty, not because they are obvious to the purchaser’s senses, but because they are not cases of unsoundness. We do not understand, either in legal, or common parlance, that a negro is unsound because he wants a leg, or an arm, or a horse because he wants a tail * although the capacity of the negro lor work, and the beauty of the horse are both greatly diminished by the deficiency, But, whatever may be the reasons for excluding these cases from the warranty, they do not apply to a clear case of disease.
It is said, in (Chitty on Contracts, 36S,) that unsoundness in a horse is any “ organic defect, any infirmity which renders it unfit for use and convenienceand the same definition, as to physical unsoundness, will apply as well to a negro as to a horse. The disease alledged in this case, was a rupture* or what is called hernia. It is frequently very obvious, but its effects on the value of the negro, it requires skill and knowledge to ascertain. Sometimes it is of no little injury to him, in other cases he is rendered wholly worthless. It is not a defect that it requires “ no skill to, detect.” In many cases no skill, or science can ascertain its effects fully; they are developed by time alone. It seems to me that this case is unlike the loss of a leg, or arm, and that it cannot be excluded from the general warranty against unsoundness, un-> less we adopt the broad principle that the purchaser’s knowledge of the existence of the defect, shall, in all cases, exempt the seller from liability on his warranty in cases of express* as well as of implied warranty. For such a principle there is neither argument, nor authority.
For these reasons, it would seem that that part of the *190 charge hereinbefore quoted was error, and, if the jul‘y had found for the defendant, I should think a new trial should be ordered. But, as the jury found for the plaintiff, the error could not have had any influence on their verdict.
Withers for the motion ; J M. DeSamsure, contra,
The contract of warranty is an undertaking to indemnify for any injury sustained by the breach of it. What the damages were, it is not easy to gather from the testimony. None of the witnesses express any opinion of the extent to which the value of the negro was diminished by the disease. They say the price was much beyond his value; and it probably was so, even if he had been, sound. .Diminution of value by reason of a disease is, at best, but opinion, and with all the facts before them, the jury were as competent to form an opinion as the witnesses; We cannot, therefore, say that the jury have found less than the injury sustained by the plaintiff.
Motion dismissed;
Richardson, Earle and Butler, Jj, concurring.